IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROSENFIELD & COMPANY, PLLC,

        Plaintiff,

v.                                              CASE NO.: 6:20-cv-02382-JA-LRH

TRACHTENBERG, RODES & FRIEDBERG LLP,

        Defendant.
----------------------------------------------------------------/

**DEFENDANT'S MOTION TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW**

Defendant, Trachtenberg Rodes & Friedberg LLP ("TRF" or "Defendant"), hereby

moves, pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil

Procedure, to dismiss the Complaint (the "Complaint") filed in this matter by the Plaintiff,

Rosenfield & Company, PLLC ("R&C" or "Plaintiff"), or alternatively, in the event it is not

dismissed, to transfer this cause to the United States District Court, Southern District of New

York, and states as follows:

**Background**

**A.**     **The Parties**

TRF is a New York law firm whose three partners represent clients in business disputes,

predominantly in the federal and state courts located in the State of New York.  TRF has no

office in Florida, owns no property in Florida, and otherwise has had no regular contacts with the

State of Florida.  Although one of TRF's three partners sought and obtained admission to The

Florida Bar in 2017, he has not practiced before any Florida court, and in any event, he had no

material involvement in the circumstances underlying this action.  TRF partners and staff did not

do anything in Florida that gave rise, or is relevant, to Plaintiff's purported claims.

Plaintiff R&C is an accounting firm staffed by several dozen professionals located in

three different offices:  Orlando, Florida; Metro Park, New Jersey; and New York, New York.  It

was founded and is owned by Ken Rosenfield, who is licensed as a CPA in New York and

Florida, and who maintains residences in both states.  R&C claims to have special expertise in

accountancy relative to automobile dealerships.

 B.     **R&C Is Engaged By The Star Auto Group of Dealerships**

In early 2017, a group of New York car dealerships (collectively, the "Star Auto Group")

– all nonparties here – engaged R&C not only to perform accounting work for the dealerships,

but also to perform forensic examination of the dealerships' financial records to ascertain the

nature and extent of certain embezzlements of their assets by former employees.  A copy of what

R&C described in May 2019 as its "most recent engagement letter for Star," dated March 14,

2019, is annexed as **Exhibit A**.

Based on R&C's initial findings and conclusions pursuant to that engagement, the Star

Auto Group was led to believe not only that its former employees had embezzled millions from

the Star Auto Group dealerships, but also that its longstanding accountants (a firm called

"Voynow") had negligently failed to observe and report certain red flags regarding those

embezzlements that would have permitted the Star Auto Group to root out and stop the thefts

much earlier.  And so, in late 2017, the Star Auto Group fired Voynow, and, shortly thereafter,

engaged TRF to analyze and pursue claims against Voynow.  (The Star Auto Group has already

hired different lawyers, located on Long Island, New York, to assist in engaging criminal

authorities and to pursue the dealerships' civil claims against the former employee-embezzlers.)

On or about October 16, 2018, TRF, as attorneys for the dealerships and other entities constituting the Star Auto Group, commenced an action against Voynow in the United States District Court, Eastern District of New York (the "Voynow Action").   A copy of the complaint in the Voynow Action (the "Voynow Complaint") is annexed as **Exhibit B**.

R&C was aware of the existence and nature of Star Auto Group's December 2017 engagement of TRF, and also of the claims made in the Voynow Action.  Indeed, R&C professionals were involved in the preparation of those claims – receiving and commenting upon drafts of the Voynow Complaint sent to them by TRF in 2018.  (*See* Friedberg Decl. ¶6[1]).

During the period from December 2017 (when TRF was hired by the Star Auto Group) until October 2019, while R&C provided its consulting input to TRF in respect of the Star Auto Group's action against Voynow, R&C acted only pursuant to its letter agreement with the Star Auto Group dealers.  (Friedberg Decl. ¶6; *see* Ex. A).

## C.    The TRF/R&C Letter

 In October 2019, after TRF and R&C had already consulted for almost two years pursuant to the terms of R&C's engagement letter with the Star Auto Group, and because that engagement letter (*see* Ex. A) did not reference Voynow or the Voynow Action, TRF sought to ensure that its communications with R&C would be privileged in the context of the Voynow Action by documenting a direct engagement of R&C specifically referencing that action.   Thus, on October 24, 2019, TRF attorney Barry Friedberg prepared and sent to R&C and the Star Auto Group for review an unsigned draft engagement letter.  That engagement letter (the "TRF/R&C

---

[1]     The Declaration of Barry J. Friedberg, the TRF partner responsible for TRF's representation of the Star Auto Group in the Voynow Action (cited as "Friedberg Decl."), and several relevant emails identified therein, are annexed hereto as **Composite Exhibit  C**.

Letter"), with R&C's signature added subsequently at some unknown juncture, is annexed to the Complaint and also annexed hereto as **Exhibit D**.  It is the basis for R&C's claims in this case.

The TRF/R&C Letter is addressed to R&C's owner, Ken Rosenfield, at R&C's New York office.  It was sent in draft under cover of an email to *both* Rosenfield and the letter's other intended signatory, the Star Auto Group's principal (Mike Koufakis), stating, "Ken/Michael, please review the attached and let me have any comments.  I want to get this signed up." (Friedberg Decl. ¶10).  R&C did not send back a signed copy; neither did Koufakis.  Rather, Rosenfield replied with an email, copied to both TRF and Koufakis, approving the draft but conditioning his agreement on receipt of a $5,000 retainer.  (*Id*. ¶11)  Koufakis (not TRF) paid that retainer shortly thereafter, but it appears no one signed the TRF/R&C Letter at that time. (*Id*. ¶12)

The TRF/R&C Letter referenced the Voynow Action pending in the Eastern District of New York, and stated that R&C was engaged to "assist Counsel and Client with consultation and analysis" in connection with the Voynow Action, and that the retention "shall be as of December 1, 2017," recognizing that "R&Co has worked … under the direction of  Counsel" since December 2017, when the Star Auto Group had hired TRF.  The letter further provided that R&C's fees would be at "hourly rates previously established" – i.e., the rates charged to the Star Auto Group for the previous 2+ years pursuant to the terms of the direct engagement between R&C and the Star Auto Group (*see* Ex. A).

The TRF/R&C Letter expressly states, repeatedly and variously, that only the "Client" is responsible for R&C's fees and expenses.  Thus, it states:

> Fees in connection with the Engagement will be based upon the hourly rates previously established for the work plus disbursements for fees and expenses.  **The Client will be solely responsible for payment of all such fees and expenses**.  **R&Co will submit invoices** for its fees and expenses

incurred on a monthly basis in connection with this Engagement **directly to the Client**, with a copy sent to Counsel.   The parties acknowledge and agree that the attorney-client privilege between Counsel and R&Co shall remain notwithstanding the fact that **Client is billed directly** for services provided under this Engagement.  **In the event Client disputes any of the fees or expenses on a specific invoice, the Client shall notify R&Co** within thirty (30) days of receipt of the invoice of such a dispute.

Counsel or Client shall have the right to terminate this agreement at any time, but **Client shall remain liable for all fees and expenses** accrued prior to such termination.

(Ex. D, emphasis added).

Annexed hereto as **Exhibit E** are the invoices (the "Forensic Invoices") that R&C alleges were issued pursuant to the TRF/R&C Letter.  (These invoices are annexed as an exhibit to the Complaint, as well.)  All of them indicate that they were sent to the owner of the Star Auto Group (i.e., Mike Koufakis); all but one indicate that they were copied also to TRF attorney Barry Friedberg.

Annexed hereto as **Exhibit F** is a demonstrative summary of the charges reflected in the Forensic Invoices, organized to show time and fee totals, by timekeeper and invoice.  It indicates that the overwhelming bulk of the alleged work for which R&C seeks payment was performed by two accountants located in R&C's New York offices:  Dan Jamnik and Jill Morton.

Annexed hereto as **Exhibit G** are printouts from R&C's website, one listing 27 R&C professionals and their office locations (including Dan Jamnik in New York), and another depicting a press release describing Jill Morton has a forensic expert located in R&C's New York office.

D.    **The Prior Action**

In April 2020, R&C sued the Star Auto Group in Florida state court.  The Star Auto Group removed that action to the United States District Court, Middle District of Florida, under

Case No. 6:20-cv-00857 (the "Prior Action").  A copy of the notice of removal in that action,

together with R&C's complaint therein (the "Prior Action Complaint"), is annexed hereto as

**Exhibit H**.  A copy of this Court's docket sheet in the Prior Action is annexed hereto as **Exhibit**

**I**.

The Prior Action Complaint contained a single claim for relief – denominated as "Count

I" thereof.  It asserted that the Star Auto Group was liable to R&C (for roughly the same amount

as is sought in this action) *under the same Forensic Invoices that are annexed to the Complaint*

*here*.  Indeed, the same Forensic Invoices attached to the Complaint in the instant action (*see*  Ex.

E) were attached as an exhibit to the Prior Action Complaint.  (*See* Ex. H at "Composite Exhibit

A").

"Count I" of the Prior Action Complaint also alleged that affiliates of the Star Auto

Group or its owner (the "Accounting Defendants") owed additional sums to R&C for various

accounting and/or tax work (the "Accounting Invoices").  (*Id.*).

On July 1, 2020, before answering the Prior Action Complaint, the defendants made an

Offer of Judgment under FRCP 68 (the "Rule 68 Offer"), in which they offered to consent to a

Final Judgment pursuant to which the Accounting Defendants would be adjudged liable to R&C

for the sums demanded under the Accounting Invoices.  The Rule 68 Offer said nothing, and

offered nothing, with respect to the claim for payment under the Forensic Invoices.

On August 7, 2020, R&C filed in the Prior Action its acceptance of the Rule 68 Offer.  A

copy of the notice of acceptance, together with a copy of the Rule 68 Offer, is annexed hereto as

**Exhibit J**.  A few days later a Final Judgment was entered in the Prior Action, a copy of which is

annexed hereto as **Exhibit K**.  Neither in the Judgment itself, or anywhere else in the

proceedings, did the Court in the Prior Action "expressly determine[] that there is no just reason

for delay," as is required under FRCP 54(b) to enter a partial final judgment.[2]

## E.      This Action

In November 2020, after waiting for the Prior Action Judgment to be satisfied, R&C

commenced this action by filing the Complaint in state court.

Service of process was not made until December 11, 2020, when copoies of the state

court summons and the Complaint were delivered to TRF's offices in New York.

On December 29, 2020, TRF removed this action to this Court [ECF Doc. No. 1].

## ARGUMENT

## I.      This Court Lacks Personal Jurisdiction Over TRF  [FRCP 12(b)(2)]

"The plaintiff bears the burden of making out a *prima facie* case for personal jurisdiction

by presenting sufficient evidence to withstand a directed verdict motion." *Internet Solutions*

*Corp. v. Marshall,* 557 F.3d 1293, 1295 (11th Cir.2009) (citation omitted).  The burden then

shifts to the defendant to raise a " 'meritorious challenge to personal jurisdiction" ' " 'through

affidavits, documents or testimony.' " *Id.* (quoting *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d

623, 627 (11th Cir.1996)).  "If the defendant does so, 'the burden shifts [back] to the plaintiff to

prove jurisdiction by affidavits, testimony or documents.' " *Id.*

"The Court may only exercise specific personal jurisdiction[3] over non-resident

defendants if two factors are met." *Gamecraft, LLC v Vector Putting, LLC*, 2012 WL 1581045,

at *1 (M.D. Fla. May 4, 2012), quoting *Sculptchair,* 94 F.3d at 626.  "First, there must be a basis

---

[2]      While TRF believes that the Judgment in the Prior Action constitutes *res judicata*, it does not assert that doctrine as a basis for this motion.

[3]      R&C does not assert that this Court may exercise general jurisdiction over TRF.

for jurisdiction under Florida's long-arm statute, section 48.193, Florida Statutes; and second,

maintenance of the suit cannot violate the Due Process Clause of the Fourteenth Amendment."

*Gamecraft, LLC*, 2012 WL 1581045, at *1.

R&C alleges that TRF is subject to personal jurisdiction under Florida's long-arm statute,

Fla. Stat. §48.193, and in particular, subsection (1)(a)( 7) thereof, which provides that a

nonresident defendant is subject to personal jurisdiction in Florida courts "for any cause of action

arising  from … [b]reaching a contract in this state by failing to perform acts required by the

contract to be performed in this state."

Here, R&C's purported causes of action arise out of TRF's alleged failure to pay R&C

the amounts reflected in the Forensic Invoices.

Admittedly, Florida courts have held that the failure to make payments required to be

made in Florida may serve as the basis for asserting long-arm jurisdiction under

§48.193(1)(a)(7), *see, e.g., Global Satellite Communication Co. v. Sudline*, 849 So.2d 466, 468

(Fla. 4th DCA 2003), and have further held that "where the contract is silent as to place of

payment, it is presumed to be the place of residence of the payee." *Id.*

Here, the TRF/R&C Letter is silent as to the place of payment of R&C fees.  However,

the letter was explicitly addressed to the New York office of R&C, where the two R&C

accountants who had already been doing the bulk of the forensic work were located.  Thus, for

purposes of any payments due under invoices issued pursuant to the TRF/R&C Letter, R&C's

residence should be regarded as New York City.

However, even if R&C's "residence" in this case is deemed to be its Orlando office, such

that the requirements of the statute are met via the *Global Satellite* "presumption," the

requirements of Due Process have not been satisfied.  For Florida courts have uniformly held that

8

the breach of an obligation to make a payment in Florida, standing alone, is constitutionally

insufficient to confer personal jurisdiction over a nonresident defendant.

As the Florida Supreme Court stated succinctly in the seminal case of *Venetian Salami*

*Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989), "We do not believe that the mere failure to

pay money in Florida, standing alone, would suffice to obtain jurisdiction over a nonresident

defendant." *Id*. at 503.

> [B]oth federal and state courts in Florida have found that failure to pay
> money owed per a Florida contract, standing alone, is insufficient contact
> and does not establish jurisdiction over a non-resident defendant.

*Kupperman v Shragen*, 2015 WL 6956555, at *3 (M.D. Fla. Nov. 10, 2015).   And:

> It is well-settled under Florida law that the minimum contacts requirement
> of the due process clause is not satisfied by merely showing that an out-of-
> state party entered into a contract with a Florida resident, even where the
> out-of-state party allegedly breached the contract by failing to make
> payment in Florida.

*Thomsen v. Arts*, 2012 WL 13014713 *5 (S.D. Fl. May 24, 2012); *accord Lee's Famous Recipes,*

*Inc. v. Fam-Res, Inc.*, 2007 WL 1451808  *4 (N.D.  Fl. May 15, 2007) (same); *Iervolino  Miller*,

2009 WL 10700172 *3 (S.D. Fl. Jun 17, 2009) (same); *Labry v. Whitney Nat'l Bank*, 8 So.3d

1239, 1241 (Fla. 1st DCA 2009) ("[A] lender does not meet the test just by showing that

payments a defaulting borrower owes are to be made in Florida."); *Global Satellite*

*Communication Co. v. Sudline*, 849 So.2d 466, 469 (Fla. 4th DCA 2003) ("the failure to pay

money in Florida, standing alone, would not suffice to obtain jurisdiction over a nonresident

defendant"); *Hartcourt Companies, Inc. v. Hogue*, 817 So.2d 1067, 1071 (2002) ("minimum

contacts required by the due process clause is not satisfied … merely because payment must be

made in Florida"); *Christus St. Joseph's Health Sys. v. Witt Biomedical Corp*., 805 So.2d 1050,

1053-54 (Fla. 5th DCA 2002) ("The minimum contacts required by the due process clause is not

satisfied by a mere showing that a Florida party entered a contract with an out of state party. Nor is it satisfied merely because payment must be made in Florida"); *Demco Techs. v. C.S. Engineered Castings*, 769 So.2d 1128, 1132 (Fla. 3d DCA 2000) (holding that a court could not exercise personal jurisdiction over a party solely for the party's alleged failure to pay a promissory note in Florida, even with a Florida choice of law clause in the contract).

Accordingly, this Court may not, consistent with Due Process requirements, exercise jurisdiction over TRF respecting the Complaint, and so it should therefore dismiss this action.

## II.     Venue In This District Is Improper [FRCP 12(b)(3)]

Under 28 U.S.C. §1391(b), venue is generally proper only in "(1) a judicial district in which any defendant resides, … (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, …; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any  judicial district in which … defendant is subject to the court's personal jurisdiction with respect to such action."

Here, it is undisputed that TRF does not "reside" in this district, and also that there is a district – i.e., the Southern District of New York – in which venue would be proper.  (*See* Complaint ¶7 (admitting that TRF resides in New York).  Accordingly, venue cannot be based on subsections (1) or (3) of §1391(b).

Rather, venue in this district is proper only if R&C can sustain its burden to prove that, pursuant to §1391(b)(2), a "substantial part of the events or omissions giving rise to the claim occurred" in this district.  For the following reasons, it cannot do so.

> [I]n determining whether venue is proper in a particular district, the Eleventh Circuit has made clear that under § 1391(b)(2), "only those acts and omissions that have a close nexus to the wrong" are "relevant" in determining where a substantial part of the events giving rise to the claim occurred.  [citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th 2003) ("Jenkins Brick")].  Additionally, **a court must focus its analysis**

> **on the activities of the defendant which give rise to the claim, not those of the plaintiff.** *Jenkins Brick*, 321 F.3d at 1371–72 (endorsing the Eighth Circuit's view that the statute protects defendants, and Congress " 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff' ") (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) …
>
> [T]hus the Court will engage in a two-part inquiry with respect to each claim. The Court will first consider what alleged acts by the Defendants "gave rise" to Plaintiff's claim. … Next, the Court will consider whether a "substantial part" of those acts took place in this District.

*Nu-Tek International, Inc. v. Moxley-West*, 2014 WL 12623811 (M.D. Fl. Mar. 26, 2014)

(emphasis added).

Here, the only "act or omission" by the Defendant TRF that gives rise to R&C's claim for

nonpayment is TRF's alleged failure to pay R&C invoices sent to it in New York.  That

"omission" took place in New York, and only in New York.[4]  Accordingly, because none of the

"acts or omissions" by TRF that give rise to R&C's claims here – let alone a "substantial part" of

them – occurred in the Middle District of Florida, but instead occurred only in the Southern

District of New York, venue here is improper, and the Complaint should be dismissed.

**III.     The Complaint Fails To State A Viable Claim [FRCP 12(b)(6)]**

As noted above, the TRF/R&C Letter repeatedly states that the only party responsible for

R&C's fees and expenses is the "Client."  While R&C pleads that it does not know who the

"Client" refers to, that allegation is both disingenuous and irrelevant.

---

[4]     Indeed, even if TRF's other interactions with R&C were relevant – which they are not, as only the alleged nonpayment "gave rise" to its claim – TRF did nothing in Florida that related to the Voynow Action, much less anything relating to its engagement of R&C.  All interaction between TRF and R&C occurred in New York, or at least while TRF was in New York.

First, R&C knows (and has always known) that its forensic work was, in part, in aid of TRF's prosecution of the Voynow Action, and R&C knows (and has always known) who the plaintiffs in that action were and are. *See* Ex. B (Voynow Complaint).

Second, R&C understood that, while its forensic work aided two different law firms suing two different sets of defendants – one lawsuit aimed at the former employee/embezzlers and one lawsuit prosecuted by TRF against the negligent former accountants – the two actions sought damages on behalf of the same group of injured plaintiffs: the Star Auto Group dealerships. R&C invoiced and received payments from those plaintiffs for almost three years, and so plainly knows who they are.

Third, R&C's founder and owner, Rosenfield, identified the "Client" as "Mike and his entities" when he conditionally accepted the terms of the draft TRF/R&C Letteer on October 24, 2019. (*See* Friedberg Decl., email d/d 10/24/19).

Fourth, R&C already sued the responsible Star Auto Group dealerships (or attempted to) in the Prior Action, but lazily referred to them with a fictitious name, notwithstanding that the very essence of their work – examining corporate books and records for evidence of embezzlement and former auditors' work papers for evidence of negligence – necessarily required that they understand the legal names of the dealerships in which the embezzlements occurred.

And fifth, R&C's disingenuous claim not to know who "Client" refers to in the TRF/R&C Letter is, in any event, irrelevant. What is relevant is that the plain and unambiguous language of the letter necessarily means that the party "solely responsible" for R&C's fees is *not* TRF. In view of that clear and unambiguous feature of the TRF/R&C Letter, which R&C's principal, Ken Rosenfield, expressly stated was "fine with us" (*see* Friedberg Decl. Email d/d

10/24/19), R&C can sustain no breach of contract claim (whether express or implied) against TRF.

**IV.     Alternatively, This Action Should Be Transferred [28 U.S.C. §1404(a)]**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

"In order to determine the propriety of transfer under 28 U.S.C. § 1404(a), courts must engage in a two-step analysis. First, courts must determine whether the action could have been brought in the venue to which transfer is sought.  Second, courts must assess whether convenience and the interests of justice require transfer to the requested forum." *Pac. Coast Mar. Windshields Ltd. v Malibu Boats, LLC*, 2011 WL 13142151, at *3 (M.D. Fla. Sept. 20, 2011) (footnotes omitted), citing *Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003) and *Jewelmasters, Inc. v. May Dep't Stores Co.*, 840 F. Supp. 893, 894-95 (S.D. Fla. 1993).

Regarding the first "step" of the analysis, it is indisputable that the United States District Court, Southern District of New York, is a "district or division where [this action] might have been brought."  28 U.S.C. §1404(a).  "An action might have been brought in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Windmere Corp. v. Remington Prods., Inc.*, 617 F.Supp. 8, 10 (S.D.Fla.1985) (citation omitted). Here, diversity jurisdiction would exist in the Southern District of New York, just as it does in this Court; venue would be proper in New York based on TRF's residence there; and, also based

13

on its residence in New York, TRF is "amenable to process issuing out of the [proposed]

transferee court."

Regarding the second "step" of the §1404(a) analysis – i.e., "whether convenience and

the interests of justice require transfer to the requested forum," *Pac. Coast Mar. Windshields*

*Ltd., supra* – this Court has explained:

> In the Eleventh Circuit, courts have identified nine factors to evaluate
> when considering a motion to transfer venue under § 1404(a):
>
>> (1) the convenience of the witnesses; (2) the location of relevant
>> documents and the relative ease of access to sources of proof; (3)
>> the convenience of the parties; (4) the locus of operative facts; (5)
>> the availability of process to compel the attendance of unwilling
>> witnesses; (6) the relative means of the parties; (7) a forum's
>> familiarity with the governing law; (8) the weight accorded a
>> plaintiff's choice of forum; and (9) trial efficiency and the interests
>> of justice, based on the totality of the circumstances.

*Pac. Coast Mar. Windshields Ltd. v Malibu Boats, LLC*, 2011 WL 13142151, at *3, quoting

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

The overarching purpose of § 1404 "is to prevent the waste of time, energy and money

and to protect litigants, witnesses and the public against unnecessary inconvenience and

expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and quotation marks

omitted).

As shown below, eight of the nine *Manuel* factors militate in favor of transferring this

matter to the Southern District of New York, and the ninth factor is neutral.

### A.  Convenience of Witnesses

"The convenience of both the party and non-party witnesses is probably considered the

single most important factor in [determining] whether a transfer should be granted."  *Gonzalez v.*

*Pirelli Tire, LLC*, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008); *Cent. Money Mortg. Co. v.*

14

*Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000) (finding that the convenience of the witnesses factor is given more weight than the convenience of the parties factor when considering a motion to transfer venue). "When weighing the convenience of the witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witness may provide." *Trace-Wilco, Inc. v. Symantec Corp.*, 2009 WL 455432, at *3 (S.D. Fla. Feb. 23, 2009).

Here, most of the witnesses who are non-parties (and not employed by a party) are located in or near the Southern District of New York. Thus, Mike Koufakis, the owner of the Star Auto Group who engaged R&C initially, and who previously refused to pay R&C's very same Forensic Invoices, is located on Long Island. So too are the Long Island attorneys engaged by the Star Auto Group to prosecute claims against the former employee/embezzlers, and who therefore worked with R&C on the same forensic issues before and during the period when TRF was focused on the prosecution of claims against Voynow. The expected testimony from those non-party witnesses will challenge the propriety, value and integrity of the work allegedly performed by R&C, including the work allegedly reflected in the Forensic Invoices.

### B. Ease of Access To Sources of Proof

"To examine 'the relative ease of access to sources of proof ..., the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.'" *Pac. Coast Mar. Windshields Ltd.*, 2011 WL 13142151, at *4, quoting *Trace-Wilco*, 2009 WL 455432, at *4.

15

Here, R&C's assignment was to forensically analyze documents belonging to the Star Auto Group dealerships on Long Island, New York, and work papers of the Voynow accounting firm located in Trevose, Pennsylvania (about 80 miles from midtown Manhattan) – copies of all of which were provided to R&C's New York staff.

## C.  Convenience of the Parties

Here, TRF's three partners, two associates and two paralegal/clerical employees are located in a single office, in New York City.  Plainly, it will be inconvenient for TRF personnel to travel to Florida for trial and pretrial proceedings.

R&C, on the other hand, while it may be "headquartered" in Florida, maintains its other two offices either within the Southern District of New York (at Penn Plaza in Manhattan) or within a few miles of it (in Metro Park, New Jersey).  The R&C accountant who performed the most work reflected in the Forensic Invoices – i.e., Dan Jamnik – works in R&C's New York office.  And, R&C's founder and owner, Ken Rosenfield, is licensed in New York, holds himself out as resident in both the Orlando and New York City offices of R&C, and maintains a home in the New York City.

## D.  Locus of Operative Facts

R&C was engaged, initially by the Star Auto Group directly and then by both TRF and the Star Auto Group under the TRF/R&C Letter, to perform forensic accounting work in aid of several New York proceedings.  The TRF/R&C Letter was sent by a New York law firm to the New York office of R&C.  The bulk of the work, and attendant fees, reflected in the Forensic Invoices was performed in New York by two New York-based R&C accountants (Jamnik and Morton).  (*See* Ex. F).  TRF attended no meetings with R&C in Florida; rather, the only meetings attended by both TRF and R&C took place in New York (either Long Island or New York City).

16

Plainly, we submit, the locus of operative facts is in or around the Southern District of New York, and not in the Middle District of Florida.

### E.  Ability to Compel Attendance of Unwilling Witnesses

The Middle District of Florida will be unable to compel the attendance at trial of the several material non-party witnesses who are located in New York (e.g., the owner of the Star Auto Group and the Long Island attorneys who relied, in parallel with TRF, on R&C's forensic analyses).  By contrast, there are no non-party witnesses that are beyond the reach of the Southern District of New York's subpoena power.

### F.  Familiarity with Governing Law

"When it exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to determine which substantive law governs the action."  *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp*., 550 F.3d 1031, 1033 (11th Cir.2008).

"The Florida Supreme Court has 'long adhered' to the rule of *lex loci contractus* in deciding choice-of-law issues for contract actions."  *Liberty Mut. Ins. Co. v Festival Fun Parks, LLC*, 2013 WL 4496511, at *1 (S.D. Fla. Aug. 22, 2013), citing *State Farm Mut. Auto. Ins. Co. v. Roach,* 945 So.2d 1160, 1163 (Fla.2006).  The *lex loci contractus* rule "provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage."  *Roach*, 945 So. 2d at 1163–64.

"The Eleventh Circuit has held that, in the context of Florida's *lex loci contractus* rule, '[t]he last act necessary to complete a contract is the offeree's communication of acceptance to the offeror.'"  *Rabco Corporation v. Steele Plaza, LLC*, 2018 WL 7982921, at *2 (M.D. Fla.

17

Aug. 9, 2018), quoting *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092–93 (11th Cir. 2004).

Here, the TRF/R&C Letter is a contract between TRF (a New York resident), the Star Auto Group dealerships (all New York residents), and the New York office of R&C.  It was prepared by TRF in New York, and it is addressed to R&C's New York office.  It was delivered to R&C without any signatures, by email, as a draft for comment.  It was not returned with R&C's signature; instead, it was conditionally accepted in an email from R&C's founder/owner, stating:

> This is fine with us [but] as with all litigation support requirements of our insurance company, we will require a retainer that is applied to the final invoice. As Mike and his entities are a significant client to our firm, our retainer will be minimal at $5,000.

(*See* Friedberg Decl., email d/d 10/24/19).  This response demonstrates several things, but most importantly for purposes of the *lex loci contractus* analysis, it shows (i) that a contract would not be formed, or "complete," unless a $5000 "retainer" were paid; and (ii) that R&C understood that it was "Mike and his entities," "a significant client" of R&C – and the "Client" referenced in the letter as the party "solely responsible" for R&C's fees – who would be paying that retainer. Subsequent to Rosenfield's email conditionally accepting the terms of TRF/R&C Letter, the third party to the agreement – the Star Auto Group – indicated its agreement by sending the required $5000 retainer payment to R&C.

Thus, the "last act necessary to complete" the contract reflected in the TRF/R&C Letter was the Star Auto Group's payment of the retainer, which it made from its Long Island office shortly after the October 24, 2019 email.

18

Accordingly, New York substantive law will govern the claims, defenses and any counterclaims in this action.[5]  Respectfully, it is submitted that the judges of the Southern District of New York are likely to be more familiar with New York substantive law than the judges of the Middle District of Florida.

### G.  Relative Means of the Parties

TRF is a small law firm – three partners, two associates, one office in Manhattan.  R&C is an accounting firm with at least 27 professionals working in offices located in Orlando, northern New Jersey, and New York City.  It may reasonably be inferred that R&C has relatively greater means than TRF.

### H.  Plaintiff's Choice of Forum

"[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to less consideration."  *Windmere Corp. v. Remington Prods., Inc.*, 617 F.Supp. 8, 10 (S.D. Fla. 1985); *see also Balloveras v. Purdue Pharma Co.*, 2004 WL 1202854, at *1 (S.D. Fla. May 19, 2004) (giving plaintiff's choice of forum "less than normal deference ... where the operative facts underlying the action occurred outside the district in which the action [was] brought").

Here, as noted several times above, virtually all of the operative facts underlying R&C's action occurred in New York, and not in Florida.  Formation of the contract took place in New York; the contract on its face is between three New York parties; the performance of services by

---

[5]      It also may be noted that, in the earlier engagement letter directly between R&C and the Star Auto Group, which covered the same work as was covered by the TRF/R&C Letter, not only was the last act of formation the execution of the engagement letter in New York by the Star Auto Group, but in addition that letter contained an express provision (evidently drafted by R&C) providing that New York substantive law would govern.  *See* Ex. A hereto.

R&C took place largely in New York by two R&C accountants; and TRF's alleged failure to pay

R&C obviously took place in New York at TRF's offices.

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed, and TRF awarded

costs.  In the event that this action is not dismissed under Rule 12(b) of the Federal Rules of Civil

Procedure, this Court should exercise its discretion under 28 U.S.C. §1404(a) to transfer the

matter to the United States District Court, Southern District of New York.


Dated: January 29, 2021                      ADAMS AND REESE LLP
                                      Leslie A. Wickes, Esq.
                                      Florida Bar Number 973963
                                      leslie.wickes@arlaw.com
                                      ginger.cassada@arlaw.com
                                      James N. Floyd, Esq.
                                      Florida Bar Number 0114216
                                      james.floyd@arlaw.com
                                      ginger.cassada@arlaw.com
                                      501 Riverside Avenue, Suite 601
                                      Jacksonville, FL 32202
                                      (904) 493-3302 (Telephone)
                                      (904) 355-1797 (Facsimile)


                                      AND


                                    _____
                                    Leonard A. Rodes, Esq.
                                    Pro Hac Vice
                                    LRodes@TRFLaw.com
                                    420 Lexington Avenue, Suite 2800
                                    New York, New York 10170
                                    (212) 972-2929 (Telephone)
                                    (212) 972-7581 (Facsimile)


                                    Attorneys for Defendant

20